Burket, J.
As far back as we have been able to trace the matter both in England and this country it has been uniformly held that the execution of a deed or other written instrument having one or more attesting- witnesses must, as to rights between the parties or their privies, be established by the testimony of at least one of the subscribing witnesses, and that .other proof of execution is incompetent, unless it be first shown that the evidence of such witness cannot be had.
Starkie in his work on Evidence, page 320, states the rule as follows:
*486 “If the deed or instrument produced purports to have been attested by one or more witnesses, whose names are subscribed, the party must call at least one of the witnesses, and in cases where the instrument labors under any doubt or suspicion, he ought to call them all. The law requires the testimony of the subscribing witness, because the parties themselves, by selecting him as the witness, have mutually agreed to rest upon his testimony in proof of the execution of the instrument, and of the circumstances which then took place, and because he knows those facts which are probably unknown to others. So rigid is this rule, that it is not superseded, in the case of a deed, by proof of any admission or acknowledgment of the execution by the party himself, whether the action, be brought against the obligor himself, or against his assignees after his bankruptcy; nor by proof of an admission of the execution made by the defendant in his answer to a bill in equity. The rule applies, whether the question be between the parties to the deed, or strangers; whether the deed be the foundation of the action, or but collateral, or whether it still exist as a deed, or has been canceled; and although the issue be directed by a court of equity to try the date, and not the existence of a deed. Upon an indictment against an .apprentice for a fradulent enlistment, it was held that, the indentures must be proved in the regular way. And the same rule applies to all written agreements and other instruments attested by a witness, as for instance, a notice to quit in ejectment, in which case it was held that proof of service of the notice upon the tenant, and that it was read over to him without his making any objection, was not sufficient. ’ ’
*487 Greenleaf in his work on Evidence, section 569, states the rule as follows:
£ £ The instrument, being thus produced and freed from suspicion, must be proved by the subscribing witnesses, if there be any, or at least by one of them. Various reasons have been assigned for this rule; but that upon which it seems best founded is, that a fact may be known to the subscribing witness, not within the knowledge or recollection of the obligor; and that he is entitled to avail himself of all the knowledge of the subscribing witness, relative to the transaction. The party, to whose execution he is a witness, is considered as invoking him, as the person to whom he refers, to prove what passed at the time of attestation. ”
Wharton in his work on Evidence, section 723, states the rule as follows:
“By the strict rule of the English common law, when there are subscribing witnesses to an instrument, such witnesses should be called to prove its execution, or their absence should be duly accounted for. The statutes allowing parties to be witnesses do not of themselves abrogate this rule.”
This rule was recognized and followed by this court in Zerby v. Wilson, 3 Ohio, 43, and also in Warner v. Railroad Co., 31 Ohio St., 269, and the same rule is found in Swan’s Treatise, page 154.
It is said that this rule isfounded upon the reason that a fact may be known to the subscribing witness not within the knowledge or recollection of the obligor, and that he is entitled to avail himself of all the knowledge of the subscribing witness relative to the transaction. This is the reason given by Le Blanc, J., in Call v. Dunning, 4 East., 54, and followed by many judges since , without ques-. tion or investigation as to its soundness.
*488 That this reason is unsound is clear from the consideration that the competency of evidence does not depend upon the fact of either knowledge or recollection of a particular witness.
Where two witnesses have equal means of knowledge of a particular fact, both are equally competent as witnesses, although one may have imperfectly comprehended the fact, and but faintly recollects the transaction, while the other may be clear as to the fact, and perfect in his recollection. The want of comprehension and recollection, will go as to the weight, but not as to the competency of the evidence.
Another reason given for the rule is, that because the parties themselves, by selecting the witnesses, have mutually agreed to rest upon their testimony in proof of the execution of the instrument, and of the circumstances which then took place, and because they know those facts which are probably unknown to others. This supposed mutual agreement is a pure fiction, and rarely, if ever, exists in fact. If in any case it has a real existence, and can be shown, it may perhaps be enforced; but the mere fiction is entitled to no weight and to no respect. The fact that such witness may know facts which are unknown'to others, does not go to the competency of the evidence of another witness as to facts, actually within Ms knowledge.
It is also said that the party to whose execution he is a witness, is considered as invoking him, as the person to whom he refers to prove what passed at the time of attestation. This is also a pure fiction, but may have been well enough when parties were debarred from testifying. The execution of written instruments does not involve a sacred cer *489 emony, but a business transaction, and should, like any other fact, be proven by the best evidence of which it is capable; that is, by evidence which does not presuppose the existence of other evidence of a higher character. As this rule had its origin when parties to actions were not permitted to testify, when deeds were not required to be acknowledged before an officer, and when the execution of such instruments was attempted to be proven by the admissions of the grantors, there was some reason for holding that the direct evidence of the subscribing witnesses was better and of a higher character than the admissions of the grantor, whether made orally, or in a written answer in chancery. The oral admissions were evidence only upon the presumption that a man would not admit that which was against his interest; but often the establishment of the instrument was for his interest, and then of course he should not be permitted to prove it by his admission. The same was true of an admission in an answer in chancery, with this additional objection, that he should not be permitted to prove a fact by an admission in his answer in chancery which he could not be allowed to prove by his evidence in court. He could not by his answer, do indirectly that which he could not do directly by his sworn evidence upon the trial.
But as parties to actions can now testify, and deeds are required to be acknowledged before an officer, this reason of the rule has ceased.
True, in Hodnett v. Smith, 2 Sweeny (N. Y.), 401; S. C., 10 Abb. Pr. N. S. 86, and 41 How. Pr., 190, it was held that the statutes allowing parties to be witnesses do not of themselves abrogate this rule. That decision was by the superior court of the city *490 of New York, and the cases there cited and relied upon, are decisions of the courts of common pleas of the state of New York, and those courts followed the old rule without question. Not being by a court of last resort, the case is not of controlling weight here. The question was not examined on principle, and if it had been, a different conclusion should have been reached.
While a statute making a party to an action a competent witness, does not of itself make that part of his evidence competent which was before incompetent; yet if the evidence was in its nature-competent before the statute, and was made unavailable by reason of the ineompetency of the witness, when such incompetency is removed by statute, the evidence thereby becomes available, and may be introduced through such newly enfranchised witness.
As to the execution of an instrument, it was said that the subscribing witnesses should be first called, because they not only saw, but participated in the transaction, and had their attention thereby specially called to the subject, while mere bystanders with equal opportunity to see and hear, would not so fully understand the matter as those who actually took part in the transaction, and although the grantor saw the transaction and participated therein, and was in fact the principal actor, and had full information, yet as he was an incompetent witness, it was held that the testimony of the subscribing witnesses was the best evidence of the fact of execution. On principle it was not the evidence of the g’rantor that was incompetent, but it was the witness that was incompetent. By removing the incompetency of the witness, his evidence, which in its nature was always competent, became avail *491 able to prove the fact of execution, and Ms evidence in such case is as good and of as high a character as that of the subscribing witnesses.
True, he may be interested, but that goes only to the weight and not to the character or competency of the evidence. By section 310 of the Code, adopted in 1853, parties to actions became competent witnesses, but it was provided that their interest might be shown to affect their credibility. Later the credibility part of the section was removed, and ever since that, parties to actions are competent witnesses, upon an equality with other witnesses, the credibility of all alike to be determined by the jury in view of all the circumstances.
As the evidence of those who were present and participated in the execution of the instrument, was regarded as the best evidence of its execution, and the incompetency of the grantor as a witness being now removed by statute, it inevitably follows that he is now, equally with the subscribing witnesses, competent to establish the execution of the instrument.
The rule requiring’ the execution of a deed to be proven by the subscribing witness, would exclude the officer before whom the deed was acknowledged, when we all know that such officer sees and knows all that the witnesses do, and most likely much more. The witnesses are usually hurriedly called in, and give but slight attention to the matter, while the officer usually prepares the deed and acknowledgment, shows the parties where to affix their signature, sees them sign the deed, and hears them acknowledge it; and a rule which requires such officer, and the party who signed- the instrument, to stand aside until the testimony of the subscribing’ witness is first taken as to its execu *492 tion, cannot be sound in this day, when all persons are equally competent to testify to any fact within their knowledge, unless otherwise provided by statute, as in the case of wills.
In Warner v. Railroad Company, 31 Ohio St. 269, the grantor being-dead at the time of the trial, it was proposed to establish the execution of the instrument by proving his signature, and his admission that he had. executed the instrument, without first calling the subscribing witnesses or accounting for their absence. This the court held could not be done. The testimony of the subscribing-witnesses who saw the party sign his name to the instrument, was better evidence and of a higher character than the testimony as to his handwriting- or admissions. The case was therefore correctly decided, and the rule as to the subscribing witness was not necessary to sustain the decision.
While the rule as to the testimony of the subscribing witnesses was in full force in this state, this court held in the case of Simmons v. State, 7 Ohio, 116, that the rule did not apply in the prosecution for forgery wherein the signer of the forg-ed instrument was a competent witness. Wood, J., used the following language: “In a case arising between the parties to such an instrument, having- a subscribing witness, and where the obligor, being interested, is excluded from testifying, the rule is a good one, which requires such witness to prove its execution. * * * When the obligor is competent, he must be the best witness of which the ease will admit; and the subscribing witness,in such case, need not be called.’'
As early as the case of Gray v. Smithyes, 4 Burr., 2273, it was held that the rule did not apply to' third persons in a collateral proceeding having no *493 privity with the grantor in the deed. The same was afterward held in Ayers v. Hewitt, 1 Applet., 286. There are some other exceptions to the rule, as is shown by the notes to section 569 of Green-leaf on Evidence. In Maryland the rule was regarded so narrow, that it was changed by statute as early as 1825.
We think that the statutes requiring deeds to be acknowledged before an officer, and permitting parties to testify, have so enlarged the rules as to the manner of proving the execution of a written instrument having subscribing witnesses, as to abrogate the old rule, and to permit such execution to be proven alike by the grantor, the subscribing witnesses, or the officer before whom the acknowledgment was taken.
Whether or not the court erred in not permitting the abstract to be received in evidence, depends upon the question, as to whether the attorney of record has power to bind his client by agreement in writing before the trial, as to a matter of evi- ’ dence, to facilitate the preparation for trial, or to save expense, or shorten the trial; and whether what was written on the abstract, made it competent evidence on the trial.
Section 5288, Revised Statutes, provides, that either party may exhibit to the other, or to his attorney at any time before the trial, any paper or document material to the action, and request an admission in writing of its genuineness; and if the adverse party or his attorney fail .to give the admission, such party shall pay the costs of proving the genuineness of such paper or document. This section clearly recognizes the authority of the attorney to bind his client in such eases.
In practice it is a daily occurrence for attorneys *494 to enter into written stipulations as to matters of evidence, and the uniform current of authorities, both in England and this country, is in favor of the power so to do.
In vol. 1, page 954 of Am. & Eng. Enc. of Law, we find the following:
“An attorney at law has authority, by virtue of his employment as such, to do on behalf of his client all acts, in or out of court, necessary or incidental to the prosecution or management of the suit, and which affect the remedy only, and not the cause of action. This includes the right to demand and receive payment in money of the client’s debts; ■and part payments are within his power to receive as well as payments in full. As long as he appears as attorney on record, bona fide payments to him discharge the debt, no matter what private instructions he may have received from his client. He may ■ also sue out an alias execution. He may receive livery of seisin of land taken under an extent; may waive objections to evidence and enter into stipulations for tne admission of facts or conduct of the trial, and for release of bail; may waive notices, and give extensions of time to file papers and confess judgment; and may open a default which he has taken (whether improperly or not) and vacate the judgment entirely, even though (it has been held) his client has instructed him to the contrary.”
The authorities cited in support of the power here in question, fully sustain the text. Among-others the following are cited: Lacoste v. Robert, 11 La. An., 33; Stephen’s Digest of the Law of Evidence, 46; Moulton v. Bowker, 115 Mass., 36; Lewis v. Sumner, 13 Met. (Mass.), 269; Elton v. Larkins, 1 Moody & Robinson’s Reports, 196; Young v. Wright, 1 Campbell’s Reports, 139.
*495 In Ish v. Crane, 13 Ohio St., 574, the case was submitted to the district court upon an agreed statement of facts, signed by the attorneys of record, and the case was reserved to this court, and after such reservation and before the hearing, counsel for defendant in error attempted to revoke, withdraw and annul the agreed statement of facts, to which the attorney for plaintiff in error objected. This court refused to permit the withdrawal of the agreed statement, and in deciding the point used the following language:
“It has long been the practice in this state, as well as in the courts of other states, for counsel to mutually agree upon a state of facts, and to reduce the agreement to writing, and file it in the case, instead of being to the trouble and expense of taking proof by depositions, or otherwise, to show the facts. And when such agreement is reduced to writing, and signed by the parties, or their counsel, and filed in the case, I think the general understanding, both of the bar and court has been that the same was to be regarded,, until set aside by the court, as a special verdict of a jury, expressing the result of the proof made by both parties, and so belonging to both parties, that neither party could withdraw the same.
It is not doubted that, in case of an agreed statement having been so made and filed by mistake, or misapprehension of the existing state of facts by one of the parties, he might, consistently with fair practice, upon notice to the adverse party or his counsel, apply to the court for leave, on the ground of such mistake or misapprehension, to withdraw from the files such agreed statement, or such part thereof as was, in fact, untrue and had been so assented to by mistake or misapprehension. ■ And *496 upon the merits of such motion being sustained by-proof, satisfactory to the court, it is not doubted the court might grant such relief as the party should show himself justly entitled to. ’ ’
In view of these authorities, we are of opinion, and so hold, that an attorney of record has ample power to do on behalf of his client all acts, in or out of court, necessary or incidental to the prosecution, management or defense of the action, and which affect only the remedy, and not the right, and that this includes the power to waive objections to evidence, and. enter into stipulations for the admission of facts on the trial. .
In case the court should, on motion, allow such agreed statement to be withdrawn, ample time should be given for the preparation of the case on other testimony, so as not to take either party by surprise. The spirit is the same as that of section, 5286, Revised Statutes, which requires exceptions to depositions to be heard and disposed of before the commencement of the trial.
The abstract which was ruled out is found in the bill of exceptions, and seems to sustain the contention of the plaintiff. • It was therefore material, and if the agreement was sufficient, it should have been received in evidence.
The agreement states that the abstract shows the true condition of the title of the lands therein described, and it appears- that the lands therein described are the lands in question; but the agreement fails to state that the abstract may be used as evidence on the trial. But this was not necessary. Whatever is true may, if relevant, be received in evidence. The truth of the abstract being admitted; plaintiff had a right to use it as evidence, without further agreement of defendant that he might do *497 so. It follows that the court of common pleas erred in ruling out the deed and abstract, and in overruling the motion for a new trial, and that the circuit court erred in affirming the judgment of the common pleas. Both judgments are therefore reversed, and the cause remanded to the court of common pleas for a new trial.

Reversed and remanded.

Spear, J., dissents on the ground that the facts do not warrant the judgment of reversal on the second ground.
Minshall, C. J., dissents from the first proposition of the syllabus in so far as it decides that a deed may be proved by the officer before whom it was acknowledged, unless also made a witness to the deed. To so decide, is not necessary to the decision of this case.